COMMONWEALTH *vs.* STEPHEN L. COVIELLO.

Middlesex.    January 11, 1979. — January 31, 1979.

Present: GRANT, ROSE, & GREANEY, JJ.

*Evidence*, Prior conviction, Other offense. *Witness*, Impeachment.

At a criminal trial, the judge erred in ruling as matter of law that defense counsel could not elicit evidence of the defendant's prior convictions on direct examination of the defendant. [22-26]

At the trial of a defendant charged with rape, the judge should have excluded testimony by the victim's female companion that, prior to the rape incident, the defendant had masturbated in her presence after she had rebuffed his sexual advances. [26]

INDICTMENT found and returned in the Superior Court on November 9, 1976.

The case was tried before *Lappin*, J.

*John C. McBride*, for the defendant.

*Susan C. Mormino*, Assistant District Attorney, for the Commonwealth.

GRANT, J. The defendant has appealed from his convictions on both counts of an indictment for rape.[1] Two questions of evidence have been argued.

---

[1] Both counts allege that the defendant "did have sexual intercourse *or* unnatural sexual intercourse with . . . and did compel said . . . to submit by force and against her will, to *said* intercourse *or* did compel said . . . to submit by threat of bodily injury to *said* intercourse" (emphasis supplied). No question has been raised as to the uninformative nature of the charges. Both parties appear to have been content to try the case on the theory that one count charges forced fellatio and that the other count charges forced vaginal intercourse, but we are at a loss

Commonwealth *v.* Coviello.

1. The first question is as to the propriety of a ruling by the trial judge which precluded defense counsel from eliciting any evidence of the defendant's previous convictions in the course of counsel's direct examination of the defendant. That ruling must be considered in the context of the pattern of the evidence and proceedings at trial.

There was evidence (principally in the form of the testimony of the victim named in both counts of the indictment) from which the jury could have found that the victim and a female companion spent the major portion of a Friday evening in a cocktail lounge; that while at the lounge the victim became acquainted with the defendant; that toward the end of the evening the victim became separated from her female companion; that the victim accepted the defendant's offer to drive her home in his car; that the defendant drove the car to a nearby secluded area, where he beat the victim and forced her to fellate him and to submit to vaginal intercourse; and that the defendant climaxed his activities by masturbating in the presence of the victim. The defendant took the stand and denied that he had beaten the victim, denied any act of fellatio or masturbation, admitted that he had had vaginal intercourse with the victim while with her in the car, and testified that such intercourse had been consensual.

Counsel for the defendant advised the jury in his opening statement, made before the prosecution called its first witness, that the defendant would testify in the manner already related. Counsel did so with knowledge that the defendant would be embarrassed by convictions which would be admissible in evidence under G. L. c. 233, § 21, and that the convictions included one of assault and battery, one of open and gross lewdness and lascivious behavior (G. L. c. 272, § 16), and two of being a wanton, lewd and

to know which count charges which offence. We would have been left in the same state of ignorance in *Commonwealth* v. *Gonzales*, 5 Mass. App. Ct. 705 (1977), if the parties in that case had not entered into a posttrial stipulation as to the basis of each count.

lascivious person in speech and behavior (G. L. c. 272, § 53). At the opening of the second day of the trial counsel presented a motion to suppress all evidence of the defendant's prior convictions. See *Commonwealth* v. *Chase,* 372 Mass. 736, 750 (1977). The motion was heard in the absence of the jury and was denied. The defendant has not argued to us that it was error to deny the motion. We mention the motion only because it was at that time that the judge was advised of the general nature of the defendant's convictions.

Counsel for the defendant then attempted to bring the convictions out during his direct examination of the defendant. When the assistant district attorney objected, the judge excluded counsel's inquiry with the remark that "[t]he thing which prohibits you is the rule that says you can't impeach your own witness."[2] The defendant duly excepted. All four convictions were brought out during the assistant district attorney's cross examination of the defendant: the two convictions of being a wanton, lewd and lascivious person in speech or behavior were introduced immediately following the defendant's contradiction of the testimony of the victim's female companion to the effect that the defendant had also masturbated in her presence;[3] the convictions of assault and battery and of open and gross lewdness and lascivious behavior were introduced as soon as the defendant denied that he had beaten the victim. In both instances, and in the charge, the judge properly instructed the jury as to the purpose for which they could consider the convictions.

In *Commonwealth* v. *Cadwell,* 374 Mass. 308 (1978), the defendant, who was on trial for murder in connection with the beating death of a small child, objected when the

---

[2] This case was tried several months prior to the decision in *Commonwealth* v. *Cadwell,* 374 Mass. 308, 311-313 (1978), and the judge's remark may have reflected his understanding of the discussion in *Walter* v. *Bonito,* 367 Mass. 117, 120-123 (1975).

[3] That testimony will be considered in part 2 of this opinion.

prosecution started to elicit testimony from the child's mother, who had also been indicted for murder in connection with the same death, that "she had pleaded guilty to being an accessory to the crime of manslaughter, the murder charge being nol prossed." One of the bases of the objection apparently was that "the Commonwealth should have taken Mrs. Gerwaski through a direct examination without getting into the matter of her guilty plea; the defense would be then at liberty on cross-examination to use the plea to weaken her credibility by suggesting bias *as well as conviction of crime*" (emphasis supplied). 374 Mass. at 311. The court, after noting that the defendant's objection had been untimely, had the following to say: "Had the objection been timely made in the same form, the judge would have been justified in overruling it and permitting the prosecution to question Mrs. Gerwaski as it did. When the prosecution tenders as its witness a person with a criminal record, it sometimes starts by eliciting this history. (*The defense sometimes does the same when offering such a witness on its part.*) The interrogation should not be regarded as an impeachment of the prosecution's own witness prohibited by G. L. c. 233, § 23 (see [citations omitted]), nor can the defense claim a right to bring out the damaging facts for the first time in a perhaps more dramatic way on cross-examination. This 'is not something which is to be reserved for the pleasure and strategy of the defense.' *United States* v. *Freeman,* 302 F.2d 347, 350 (2d Cir. 1962). The jury are entitled to the information for its bearing on the value of the witness's testimony, and the prosecution might indeed on occasion suffer unfairly in the estimation of the jury for attempting to conceal the criminal record if it did not come forward with it" (emphasis supplied). 374 Mass. at 312.

We read the last quoted passage to say that the defense has a right, equal to and coextensive with that of the prosecution, to elicit on direct examination of its own witnesses the facts concerning any convictions they may

have which would be admissible in evidence if offered by the prosecution under the provisions of G. L. c. 233, § 21. There is no sound reason why the rule should be any different when the defense tenders the defendant himself as a witness. If our reading of the *Cadwell* case is wrong because it goes no further than enunciating a rule to the effect that the question of who will offer a criminal record is one of the order of proof which is to be determined by the trial judge in the exercise of his discretion (see, e.g., *Commonwealth* v. *Saarela*, 376 Mass. 720, 722-723, 723-724 [1978]), then we have to conclude that the defendant was improperly denied access to the exercise of such discretion. The exclusionary ruling which was made in this case ("[t]he thing which prohibits you is the rule that says you can't impeach your own witness") must be construed as a ruling of law to the effect that the judge had no discretion to allow what counsel wanted. Accordingly, if the alternative reading of the *Cadwell* case which has just been suggested is the correct one, the judge's ruling must still be regarded as erroneous. See, e.g., *Commonwealth* v. *Fontain*, 127 Mass. 452, 455 (1879); *Long* v. *George*, 296 Mass. 574, 578 (1937) ("An error in ruling that no discretion exists is an error of law which may be reviewed on exceptions"); *Peterson* v. *Cadogan*, 313 Mass. 133, 134-135 (1943).

The offences of which the defendant had been previously convicted were similar to those for which he was on trial. There is room for doubt whether the jury ever understood that the defendant was attempting to bring his record to their attention.[4] "[T]here is an especially serious danger that [the] jury . . . disregard[ed the] limiting instructions and allow[ed] the convictions to influence their deliberations as substantive evidence. . . . In this light, and considering the condition of the rest of the proof in the case, we cannot say that the defendant[ ] might not

---

[4] The only question counsel was able to ask was, "Now, sir, have you ever been in court before?".

have prevailed if [he had been able to introduce] the records of conviction .... Hence a new trial is called for." *Walter* v. *Bonito*, 367 Mass. 117, 124 (1975).

2. The victim's female companion testified to an episode which took place in a different car shortly prior to the one which has already been related. According to her testimony, the defendant had driven the car from the cocktail lounge to a nearby service station in order to secure water for the radiator, had stopped in the parking lot of a church, and had proceeded to masturbate to the point of ejaculation when the companion rebuffed his sexual advances. There is no merit to either of the exceptions taken as the testimony was offered. The defendant now argues for the first time that the evidence should have been excluded because it disclosed his commission of a separate and distinct offence which was not charged in the indictment.[5] We consider the question only because it is likely to arise at a new trial.

The defendant was not charged with any form of lewd and lascivious behavior (see G. L. c. 272, §§ 16, 35 and 53); it was clear from his opening statement that there was no question as to his identity or as to his having had sexual intercourse with the victim of the alleged rapes; and the act had not been committed in the presence of the victim (contrast *Commonwealth* v. *Machado*, 339 Mass. 713, 715 [1959]). The prosecution argues that the evidence disclosed a disposition to commit another sexual offence; we think it may equally have disclosed a disinclination to secure sexual gratification by the use of force. The relevance of the evidence to the rapes was doubtful at best. See *Commonwealth* v. *Welcome*, 348 Mass. 68, 70-71 (1964). The evidence was highly prejudicial, and we think it would be the wiser course to exclude the evidence at any retrial. See *Commonwealth* v. *Deschamps*, 1 Mass. App. Ct. 1, 3 (1972), and cases cited.

---

[5] Both briefs proceed on the premise that the described conduct constituted a criminal offence. See *Commonwealth* v. *Dickinson*, 348 Mass. 767 (1964).

The judgments are reversed, and the verdicts are set aside.

*So ordered.*