COMMONWEALTH *vs.* KEVIN WATKINS.

No. 90-P-1204.

Middlesex. September 11, 1991. - July 14, 1992.

Present: ARMSTRONG, IRELAND, & GREENBERG, JJ.

*Rape. Practice, Criminal*, Indictment, Double jeopardy, Collateral estoppel, Voluntariness of statement, Voir dire.

A criminal defendant, convicted on one indictment for rape and acquitted on a second identically-worded indictment, was not entitled to dismissal of the remaining indictment as facially defective under art. 12 of the Massachusetts Declaration of Rights and, absent circumstances to consider the applicability of double jeopardy and collateral estoppel principles, the conviction would stand. [7-12]

The judge at a rape trial properly admitted in evidence statements the defendant had made to a private citizen, where the defendant waived any right he may have had to a voir dire on the issue of voluntariness, where the record did not support a claim that the statements were involuntary, and where the statements were exculpatory in effect and consistent with the defense strategy. [12-17]

INDICTMENT found and returned in the Superior Court Department on September 20, 1989.

The case was heard by *Paul A. Chernoff*, J.

*Willie J. Davis* (*Marie Elena Saccoccio* with him) for the defendant.

*Daniel A. Less*, Assistant District Attorney, for the Commonwealth.

ARMSTRONG, J. The defendant, a second-year law student, was tried on two identically worded indictments for rape (same date, same victim) and was found guilty on one and not guilty on the other. The episode that gave rise to the indictments, according to the victim, an undergraduate at the same university, involved five or six penetrations, some vaginal and some oral, and, as the defendant sought no specifications (and as the judge gave no instructions) that differenti-

ated the two charges, there is no way of ascertaining which portions of the victim's testimony the jury may have accepted and which they may have rejected. In these circumstances, the defendant argues, if the conviction is allowed to stand, he is deprived of the constitutional and common law protections against double jeopardy; and, more basically, he argues, the indictments were invalid ab initio because they did not comply with art. 12 of the Massachusetts Declaration of Rights, which requires that "[n]o subject shall be held to answer for any crimes or offense, until the same is fully and plainly, substantially and formally, described to him . . . ."

The indictments followed the statutory form set out in G. L. c. 277, § 79,[1] adding only the date of the offenses. The statutory forms have been upheld as constitutionally sufficient from the decision in *Commonwealth* v. *Jordan*, 207 Mass. 259, 266-268 (1911), aff'd, 225 U.S. 167 (1912), to, more recently, *Commonwealth* v. *Green*, 399 Mass. 565, 566-568 (1987), and *Commonwealth* v. *Robertson*, 408 Mass. 747, 749 (1990). See Smith, Criminal Practice and Procedure § 730 (2d ed. 1983). For purposes of double jeopardy protection, it is generally immaterial which act or acts the jury based their verdicts on, as a plea of either prior conviction or prior acquittal bars retrial on the offenses as to which the defendant was put in jeopardy. *Id.* at § 1316.

The doctrine of collateral estoppel, however, requires greater particularization. The protection afforded by collateral estoppel depends on "the concurrence of three circumstances: (1) a common factual issue; (2) a prior determination of that issue in litigation between the same parties; and (3) a showing that the determination was in favor of the party seeking to raise the collateral estoppel bar." *Commonwealth* v. *Lopez*, 383 Mass. 497, 499 (1981). "The burden of showing these circumstances is always on the person raising the bar." *Ibid.* If it should be necessary to retry the indictment on which the defendant was convicted, he would be un-

---

[1] "*Rape* . . . That A.B. did assault C.D. with the intent to commit rape; and did commit rape upon said C.D."

able to carry that burden because he cannot identify the acts that were encompassed in the acquittal.

In arguing for dismissal of the indictment on which he was convicted, the defendant relies heavily on *United States* v. *Panzavecchia*, 421 F.2d 440 (5th Cir. 1970), cert. denied, 404 U.S. 966 (1971). The indictment against Panzavecchia contained three counts of uttering counterfeit ten dollar bills. The counts stated the dates and places (by town) of the offenses and the series dates and serial numbers of the bills, but, as these were all the same, the counts read identically. The evidence was that Panzavecchia passed three counterfeit ten dollar bills from the same run in three different stores in the same town on the same day. The jury returned guilty verdicts on two counts and not guilty on the third. *Id.* at 441. With no independent ground for reversal, the circuit court ordered dismissal of the indictment, characterizing it as faulty for not differentiating the three counts — a fault which it held could not be cured by a bill of particulars (*id.* at 442). The indictment was said to be faulty, not because its counts did not "sufficiently apprise[] the defendant of what he must be prepared to meet," but because "in case any other proceedings are taken against him for a similar offense, . . . the record [would not] show[ ] with accuracy to what extent he may plead a former acquittal or conviction." *Id.* at 441, quoting from *Russell* v. *United States*, 369 U.S. 749, 763-764 (1962).

The *Panzavecchia* opinion has been cited infrequently, and, so far as we have found, never squarely followed. *People* v. *Jordan*, 19 Cal. App. 3d 362 (1971), cited by the defendant as following *Panzavecchia*, held only that, where identically worded indictments were attacked by demurrer before jeopardy had attached, the judge could properly anticipate the collateral estoppel problem that would result from a mix of acquittals and convictions and, acting in his discretion, could order the indictments dismissed with leave to return new, more specific indictments. 19 Cal. App. 3d at 370-371.

It did not rule the indictments defective as matter of law.[2] More to the point is *State* v. *Cassey*, 543 A.2d 670 (R.I. 1988), which dealt with three identically worded counts of first-degree sexual assault upon a child thirteen years of age or under. The counts specified no dates or places. The Rhode Island Supreme Court sustained the indictment, rejecting the *Panzavecchia* analysis, and reasoning that the defendant had ample opportunity, by way of discovery or a motion for a bill of particulars, to ascertain the times, places, and circumstances of the offenses alleged. Rhode Island law, the court held, "d[oes] not require 'that the indictment must be so distinct and minute in its allegations that it will constitute, without oral proof*, a bar to another indictment.' " *State* v. *Cassey*, 543 A.2d at 675, quoting from *State* v. *Jorjorian*, 82 R.I. 334, 344 (1954). Our law also envisions resort to the whole trial record to ascertain the collateral estoppel effect of an acquittal: "Where a question of collateral estoppel is raised, *Ashe* [v. *Swenson*, 397 U.S. 436 (1970),] requires the Court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' " *Common-*

---

[2]*United States* v. *Heinze*, 361 F.Supp. 46, 49-51, 55-56 (D. Del. 1973), dealt simply with vaguely worded indictments, not with clear but identically worded indictments. In *United States* v. *Bearden*, 423 F.2d 805, 811 & n.8 (5th Cir.), cert. denied, 400 U.S. 836 (1970), the court indicated that *Panzavecchia* cast some doubt on the validity of convictions under two identically worded counts, but the court "pretermit[ted] discussions of these counts, solely as a matter of judicial convenience," because the sentences on those counts were concurrent with other, valid sentences. *United States* v. *Alford*, 516 F.2d 941, 945 (5th Cir. 1975), cited *Panzavecchia* only for the general proposition that an indictment should sufficiently warn the defendant of the conduct charged to enable him to prepare his defense. *United States* v. *McPhatter*, 473 F.2d 1356, 1358 n.1 (5th Cir.), cert. denied, 414 U.S. 834 (1973), merely distinguished *Panzavecchia* on the ground that the separate counts (in *McPhatter*) were not identical, each identifying a different check.

*wealth* v. *Lopez*, 383 Mass. at 499, quoting from *Ashe* v. *Swenson*, 397 U.S. at 444.[3]

The necessity of going beyond the words of an indictment to ascertain the preclusive effect of a verdict on the indictment, or to differentiate the indictment from one that is identically worded, has not, under our decisions, been treated as indicative of faulty indictments. In *Commonwealth* v. *Coviello*, 7 Mass. App. Ct. 21, 21 n.1 (1979), identically worded counts of an indictment for rape were tried by the parties on the basis that one was for forced oral intercourse, and the other, for forced vaginal intercourse; and in *Commonwealth* v. *Gonzales*, 5 Mass. App. Ct. 705, 706 (1977), as explained in the *Coviello* decision, identically worded counts of an indictment for rape were differentiated by a posttrial stipulation of the parties (to the effect that one count was for vaginal intercourse, the other for anal intercourse). In *Gonzales*, a conviction was affirmed; in *Coviello*, retrial on the counts was ordered based on evidentiary points. These dispositions were, of course, inconsistent with the defendant's contention in this case, that indictments so framed are facially defective.[4]

We conclude, therefore, that the fact that the indictment on which the defendant was convicted is identical to the indictment on which he was acquitted is not, by itself, a ground for reversal. We need not consider the question whether retrial would be barred by principles of double jeop-

[3]The *Panzavecchia* decision itself seemed to recognize that the indictments were not invalid ab initio: "The technicality of our decision in this matter is obviously pointed up by the fact that a judgment of conviction or acquittal on *all* counts would have obviated the present dilemma" (emphasis in original). 421 F.2d at 442. We acknowledge, however, our inability to reconcile the quoted statement with the opinion's characterization of the indictment as "faulty" (*id.* at 440), incapable of cure by particulars (*id.* at 442), and with its conclusion that the government could retry Panzavecchia by obtaining "the issuance of a new indictment in proper form" (*id.* at 442).

[4]The contrary conclusion of *Panzavecchia* was put on the basis that any particularization to differentiate identically worded indictments would, in effect, preempt the exclusive power of the grand jury to charge crimes, as contrasted with explicating the evidentiary details of a crime already charged. 421 F.2d at 442.

ardy or collateral estoppel in the event that there should exist an independent ground for reversal, because such is not the case.

The only independent ground for reversal advanced by the defendant is the admission in evidence, over objection, of the defendant's statements to one Mr. Marc Lauritsen, an attorney at law and employee of the university who, at the university's request, conducted an investigation into the charges brought by the alleged victim. In connection with that investigation, cognizant that criminal charges of rape were being pressed by the public authorities, the university provided the defendant with an attorney, Mr. Martin Gideonse, also a university employee, to advise him during the university's internal investigation. The defendant, with Mr. Gideonse present, cooperated with the investigator, answering questions and giving his side of the story (in essence, that the acts of sexual intercourse took place but were consensual). These statements came into evidence as part of the Commonwealth's case, through the investigator, over the defendant's objection and after his request for a voir dire.

The objection was raised orally, while the trial was ongoing, the day the investigator, Mr. Lauritsen, was to testify. Before trial the defendant had filed two written motions in limine, one seeking a voir dire as to the voluntariness of the defendant's statement given to police officers at the time of his arrest, the other seeking a voir dire to determine whether the defendant's statements made to Mr. Lauritsen were inadmissible hearsay. The first was waived expressly; the second was denied, but that ruling is not pressed as a ground for reversal. Neither motion, as written, raised a question as to the voluntariness of the defendant's statements to Mr. Lauritsen, but, in the course of arguing the hearsay objection, the defendant clearly raised the claim of involuntariness, supported by an assertion of his counsel to the effect that the statements to Mr. Lauritsen were involuntary because, if he did not cooperate, he would be "kicked out of" the university. The judge indicated that he saw little indication of involuntariness, particularly where the interrogator was a pri-

vate citizen, not a police officer, and where the defendant was represented by counsel at the interrogation. Nevertheless, as we read the transcript, the judge offered to conduct a voir dire on the issue of voluntariness, which the defendant's trial counsel declined because he had not arranged for the presence of Mr. Gideonse, who had counseled the defendant at the interrogation. We do not agree with the defendant that the judge was offering, incorrectly, to conduct a voir dire in the jury's presence.[5] Moreover, we understand the judge to have left open the door to a voir dire later, if sought by the defendant after the Commonwealth had laid a foundation for admission of the statements. On this reading of the transcript, the defendant was at liberty to summons in Mr. Gideonse and to move for a voir dire when Mr. Lauritsen was on the stand. This the defendant never did. In the circumstances we conclude that the defendant waived any right he may have had to a voir dire.[6]

---

[5]The relevant colloquy was as follows:

"THE COURT: Do you have any evidence that you want to present on the issue of voluntariness? I'm certainly willing to do a voir dire of this particular witness. I'm certainly willing, in front of the jury, to allow the Commonwealth to lay a foundation as to what the discussions were, and the environment of the discussions, and then hear you at the sidebar as to whether or not there's a reasonable doubt as to whether there's — whether the statement was voluntary.

"[THE DEFENDANT'S COUNSEL]: I couldn't do that, your Honor, unless and until Mr. Gideonse was present. And, quite frankly, I didn't anticipate that this would occur, so that I have not subpoenaed him."

We recognize that the judge indicated thereafter that he did not see a genuine issue of involuntariness, but he continued, "I will certainly keep my ears open. As the evidence unfolds at trial, I'd ask the Commonwealth to lay a foundation from statements, and I'd certainly hear you at the sidebar, and if you see a glimmer of involuntariness — and I would also be willing to instruct the jury that they must find his statement voluntary beyond a reasonable doubt, if you feel that — if you want that instruction at the end of the trial." We interpret the judge's reference to hearing counsel at sidebar as an allusion to his continuing offer to conduct a voir dire after the Commonwealth had laid the foundation for introduction of the defendant's statements to Mr. Lauritsen.

[6]Massachusetts Rule of Criminal Procedure 13(c)(2), 378 Mass. 873 (1979), requires that "[a] defense or objection which is capable of determination without trial of the general issue shall be raised before trial by

The defendant was (and is) represented by experienced and highly capable counsel, who doubtless would have renewed the request for a voir dire and summonsed in Mr. Gideonse if there were merit to the claim of involuntariness. The judge was correct, however, in not sensing a "glimmer" of involuntariness in the university's investigation. In the context of admissions by a defendant to private citizens (as contrasted with police and prosecutors, or as contrasted with government officials in a non-criminal setting), involuntariness has been found primarily where there has been actual physical or psychological coercion. See *Commonwealth v. Mahnke*, 368 Mass. 662, 679 (1975), cert. denied, 425 U.S. 959 (1976); *Commonwealth v. Allen*, 395 Mass. 448, 455 (1985).[7] Apart from the nontestimonial assertion of defense counsel that the defendant had to testify before the investigator to avoid being "kicked out" of the university, the record contains no suggestion of duress. The judge would be justified in interpreting counsel's ambiguous statement as refer-

---

motion." Two appellate decisions have permitted defendants to raise objections at trial to matter which might have been the subject of motions to suppress before trial. See *Commonwealth v. Adams*, 389 Mass. 265, 269-270 (1983); *Commonwealth v. Rubio*, 27 Mass. App. Ct. 506, 510 (1989). In the *Adams* decision the court pointed out that "noncompliance [with rule 13(c)(2)] can be excused because it is not clear that the defendant was aware [before trial] of the failure of the police to give the full Miranda warnings." 389 Mass. at 270 n.1. In *Rubio*, a Miranda violation became clear as the trial unfolded. In the present case the circumstances of the defendant's statements to the university's investigator were, so far as appears, fully known before trial. Given the uncertain status of a failure to follow the procedure prescribed by rule 13(c)(2), it is best to follow the suggestion of the *Rubio* opinion that, where a judge is faced with a mid-trial objection to the introduction of a statement alleged to be in violation of the *Miranda* decision or involuntary, "the prudent thing for the judge to do is to stop the trial and conduct an appropriate inquiry." 27 Mass. App. Ct. at 511.

[7]Another category of actual involuntariness focuses on statements made by a defendant while suffering from "a physical injury, physical illness, physical fatigue, mental illness, mental deficiency, or an abnormality caused by drugs or alcohol." 1 LaFave & Israel, Criminal Procedure § 6.2(c), at 449 (1984). None of those is involved in the present case. See, e.g., *Commonwealth v. Brady*, 380 Mass. 44, 48-52 (1980); *Commonwealth v. Allen*, 395 Mass. 448, 454-457 (1985); *Commonwealth v. Benoit*, 410 Mass. 506, 511 (1991).

ring to the natural concern of one in the defendant's position that, as a practical matter, disciplinary action would be more likely if the university authorities should hear only his accuser's version of events. If counsel were prepared to show that the university had threatened expulsion for noncooperation, he would presumably have made a more specific offer.[8] The only testimony on the subject (by Mr. Lauritsen) was to the effect that no conditions were put on testifying or not testifying and that there was no discussion of the possibility of dismissal. In a substantially identical situation (a university student accused of assault with intent to commit rape, and faced simultaneously with a criminal prosecution and a university disciplinary hearing), the First Circuit Court of Appeals stated:

> "Although the possibility of expulsion may make participation a wise choice, the hearing procedures do not place appellee 'between the rock and the whirlpool.' *Garrity* v. *New Jersey*, [385 U.S. 493, 498 (1967)]. He can, if he wishes, stay out of the stream and watch the proceedings from dry land. But, if he does so, he forfeits any opportunity to control the direction of the current. Appellee must decide whether or not to testify at the hearing with the knowledge that, if he does, his statements may be used against him in the criminal case."

---

[8] Counsel's ambiguous assertion did not amount to "the 'affirmative,' 'credible' evidence of involuntariness which triggers a *Harris* voir dire." *Commonwealth* v. *Brady*, 380 Mass. at 50, referring to *Commonwealth* v. *Harris*, 371 Mass. 462, 571 n.3 & 472 (1976). Contrast *Commonwealth* v. *Gallagher*, 408 Mass. 510, 514-515 (1990), in which the defendant submitted, along with his pretrial motion for a voir dire, an affidavit stating that he was impaired by alcohol and cocaine at the time he made certain incriminating statements; and *Commonwealth* v. *Santosuosso*, 23 Mass. App. Ct. 310 (1986), in which (on a motion to suppress evidence) defense counsel submitted an affidavit concerning testimony at a previous trial (the affidavit, challenged as not complying with rule 13(a)(2)'s requirement that the affidavit be signed by one with personal knowledge of the factual basis of the motion, was held sufficient to require a voir dire where a transcript of the prior proceedings was unavailable).

*Gabrilowitz* v. *Newman*, 582 F.2d 100, 104 (lst Cir. l978).
To the same effect, see *Furutani* v. *Ewigleben*, 297 F.Supp.
1163, 1164-1165 (N.D. Cal. 1969); *Hart* v. *Ferris State College*, 557 F. Supp. 1379, 1385 (W.D. Mich. 1983); *Nzuve* v.
*Castleton State College*, 133 Vt. 225, 232-233 (1975).[9]

In the present case, the defendant, at the time he made his
statements to the university investigator, was a mature adult,
notably well educated, suffering from no physical or mental
impediment, acting under no physical or psychological compulsion of a type that could overbear his will, provided with
assistance of counsel, and facing no constraint other than the
danger that the university's disciplinary officials might be
more apt to credit his accuser's statements if they should be
deprived of hearing his side of the story. The likelihood that
a judge would find involuntariness on such a set of facts was,
as experienced counsel would reflect, remote in the extreme,
particularly in the absence of any suggestion that the defendant attempted to assert a privilege against self-incrimination
before answering the investigator's questions. See *Minnesota*
v. *Murphy*, 465 U.S. 420, 426-429 (1984).

Moreover, the defendant's statements to the investigator
were, in relation to the theory of the defense, exculpatory in
their effect. The defense counsel's cross-examination of the
accuser made clear that the defense was to be that any sexual activity was consensual, rather than that it did not occur.
(The cross-examination took place well before the voluntariness issue was first raised.) The defendant's statements to the
investigator were entirely consistent with that strategy of the

---

[9]On the authority of *Garrity* v. *New Jersey*, 385 U.S. 493 (1967), the
cases cited in the text, all dealing with disciplinary hearings at State universities for conduct which was also the subject of pending criminal proceedings, drew the distinction that, if the accused student's Fifth Amendment right not to incriminate himself were not respected at the
disciplinary hearing — if, in other words, he would face expulsion for refusing to testify, or adverse factual inferences could be drawn from his
silence — his testimony could not be used against him in a subsequent
criminal proceeding. For purposes of decision we have assumed, without
deciding, that the same principle would apply in the context of a private
university. Cf. *Coveney* v. *President & Trustees of the College of the Holy
Cross*, 388 Mass. 16, 19, 21 (1983).

defense and, indeed, formed with the cross-examination the evidentiary basis (the defendant not having testified) for defense counsel's well constructed and plausible closing argument to the jury. In these circumstances it is not unreasonable to suspect that counsel was more concerned with "protect[ing] the appellate record" (his phrase, stated in varying contexts throughout the trial) than with requiring the judge to conduct a voir dire, with little chance of suppression, and with much reason to think that suppression might harm rather than help the defense.

In conclusion, the indictments were valid, and the guilty verdict can stand, at least in the absence of an independent ground for reversal. Apart from admission of the defendant's statements, over objection and without conducting a voir dire, no independent ground for reversal is argued. As that ground cannot avail the defendant for the reasons stated, the conviction must stand.[10]

*Judgment affirmed.*

---

[10]The separate appeal from the orders denying several motions filed between the verdict and the sentence raises no issue not disposed of above. As the denials preceded the sentence, the appeal from the judgment subsumes the denials. A separate appeal is unnecessary as to presentence rulings.