## COMMONWEALTH *vs.* JONATHAN B. TAYLOR.

Plymouth. November 4, 1997. - December 3, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Homicide. Burning a Dwelling House. Practice, Criminal,* Required finding, Instructions to jury, Capital case. *Constitutional Law,* Admissions and confessions, Waiver of constitutional rights. *Arrest. Probable Cause. Evidence,* Admissions and confessions, Voluntariness of statement, Exculpatory, Relevancy and materiality, State of mind.

At the trial of indictments for murder and arson, the judge correctly denied the defendant's motion for required findings of not guilty. [193]

In a criminal proceeding, the judge was warranted in finding that the defendant was not in custody when questioned by police about a fire at his house and that the defendant's responses to the police were voluntarily and intelligently made: the judge correctly denied the defendant's motion to suppress his statements. [194]

An affidavit in support of an application for a search warrant provided probable cause to believe that an examination of the defendant's clothing and sneakers, and a search of the defendant's car and of the defendant's house, which were damaged by fire, would provide evidence of arson, and police acted properly in detaining the defendant until they had obtained and executed the search warrant to seize the sneakers and clothing. [194-195]

In a criminal case, the defendant's motion to dismiss the indictments was properly denied: the evidence presented to the grand jury established probable cause that the defendant committed the crimes with which he was charged; the prosecution did not mislead the grand jury; and there was no factual basis showing that exculpatory evidence was purposely withheld from the grand jury. [195]

In a criminal case, there was no error in the judge's admitting in evidence a statement the defendant had made to his sister while he was held in custody at the police station, where there was no evidence that the defendant was coerced or that he had any mental or physical impediment that would have rendered the statement involuntary. [195-196]

At the trial of a murder and arson case, the judge properly concluded that a chemist's procedures in testing the defendant's sneakers for the presence of accelerants and the chemist's testimony were reliable and admissible, and the judge properly left to the jury's consideration any deficiencies in the testing procedures. [196-197]

At the trial of an arson indictment, there was no merit to the defendant's argument that evidence of the reactions to the scene of the fire and to the defendant's sneakers by a specially trained police canine was unreliable, where that evidence was corroborated by independent scientific tests; the evidence was properly admitted with the appropriate foundation. [197-198]

At the trial of murder and arson indictments, the judge did not abuse his discretion in admitting certain written and tape-recorded evidence, found among the defendant's immediate possessions after the fire, which was relevant to the issue of malice (motive). [198]

At a murder trial, evidence that was probative of the state of mind of one of the victims and not relevant to the defendant's state of mind should not have been admitted, however it could not have influenced the verdicts where there was a substantial amount of properly admitted evidence demonstrating an unsatisfactory relationship between the defendant and the victims, his parents. [198-199]

At the trial of indictments, the judge properly exercised his discretion in declining to give an instruction for which there was no reasonable factual basis. [199]

INDICTMENTS found and returned in the Superior Court Department on August 30, 1993.

A pretrial motion to dismiss was heard by *James F. McHugh,* J.; pretrial motions to suppress evidence were heard by *Robert L. Steadman,* J., and the cases were tried before him.

*Donald A. Harwood* for the defendant.

*Paul C. Dawley,* Assistant District Attorney, for the Commonwealth.

GREANEY, J. A jury convicted the defendant, Jonathan B. Taylor, of the first degree murder of his parents (on the basis of deliberate premeditation and extreme atrocity or cruelty), and of burning a dwelling house.[1] Represented by new counsel on appeal, the defendant claims error (1) in the denial of his motion for required findings of not guilty; (2) in the denial of his motions to suppress statements made to the police and evidence obtained pursuant to search warrants; (3) in the admission of evidence; (4) in his denial of his motion to dismiss the indictments; and (5) in the judge's failure to give an instruction in accordance with *Commonwealth* v. *Bowden,* 379 Mass. 472, 485-486 (1980), concerning the adequacy of one part of the investigation. We conclude that the case was properly submitted to the jury and find no other basis to order a new trial and no reason to exercise our authority pursuant to G. L. c. 278, § 33E, to reduce the defendant's first degree murder convictions to a lesser degree of guilt. Accordingly, we affirm the defendant's convictions.

---

[1]On the first degree murder convictions, the defendant was sentenced to concurrent life sentences to be served without the possibility of parole, and a concurrent sentence of from fifteen to twenty years was imposed on the arson conviction.

The jury would have been warranted in finding the following facts. Shortly before 5 A.M. on Friday, May 14, 1993, a fire was reported at 14 Channel Street in Mattapoisett. The house was owned by Richard W. Taylor, Sr., and Janice T. Taylor, who lived there with two of their children, Richard W. Taylor, Jr., and the defendant. After the fire was extinguished, the bodies of the defendant's parents were found on the second floor of the house. They had died of smoke inhalation and extensive thermal injuries.

The fire inspector arrived on the scene about 6:30 A.M., and he proceeded to investigate the fire. A determination that the fire had been intentionally set was based on the fire inspector's inquiries of the fire chief and the first police officer to arrive on the scene, a visual examination of the house, and chemical testing of debris recovered from the house. Specifically, the investigation showed that the heaviest fire damage was to the right side of the house, up the stairway to the second floor. There was minimal damage to the first floor. The pattern of uneven char on the stairs demonstrated a "pour pattern of some type of liquid accelerant." Evidence of "alligator charring" at the top of the staircase indicated a fast moving fire consistent with the use of a liquid accelerant. The stairs were burned from the top; materials underneath the stairs were intact following the fire. The investigation conducted by a State electrical inspector did not reveal any evidence that the fire was electrical in origin. Samples of debris collected the following day at six locations from the front door and along the staircase all tested positive for the presence of gasoline. From this evidence, the fire inspector concluded that the fire had been intentionally set and accelerated by gasoline.

Prior to the determination that the fire was intentionally set, the defendant had been located in a wooded area approximately one-quarter of a mile from the scene of the fire. State troopers had been looking for the defendant because it was known that the defendant had been at the house the night before the fire; the defendant's car was parked in front of the house; the defendant's body had not been located in the house after the fire was extinguished; and the defendant had not shown up for work as scheduled that morning. The defendant was not considered a suspect at this point.

When asked by one of the State troopers what he was doing in the woods, the defendant replied that he was waiting for a

police officer. The defendant stated that he had been in the woods since before it was light and had been pacing up and down the paths because he did not know what to do. When asked what happened back at the house, the defendant replied, "You already know what happened." When asked why he "didn't run away," the defendant replied, "It's no fun hiding." The defendant led the troopers to a clearing where he had stored a duffel bag containing a stereo, cassette tapes, and various other items that he had brought with him into the woods. He then agreed to go to the police station to talk about the fire.

The defendant was given Miranda warnings after arriving at the police station and was assisted in retaining an attorney. Three search warrants were obtained and executed to seize the defendant's clothing and sneakers, and to search the defendant's car and the burned house. Chemical testing later confirmed the presence of gasoline on each of the sneakers that the defendant had been wearing when he was found on the morning of the fire.

There was evidence that the defendant had purchased gasoline the day before the fire. An attendant at a local gasoline station identified the defendant as having purchased approximately two and one-half gallons of gasoline in a red plastic container on May 13, 1993. A melted red plastic container, found inside the front door of the burned house, was one of the items that later tested positive for the presence of gasoline.

The jury were also warranted in finding that the defendant possessed animosity toward his parents that could have provided a motive for the killings. The defendant's feelings resulted from his strongly held belief that he had been adopted and his parents' refusal to acknowledge this supposed fact. Evidence of this belief was found in a notebook and a tape recording of a conversation between the defendant and his mother that were seized from the defendant's car. The notebook contained excerpts from a story that the defendant had written concerning a boy who had been hypnotized to erase his memories of having been adopted. Although the defendant called the story "science fiction," the preamble states, "I am the ideal person for writing this work, because I actually experienced it. In reality, this story is ninety percent non fiction [*sic*] . . . ." The tape recording contained a lengthy conversation between the defendant and his mother in which he refused to accept her statement that he had not been adopted. Other testimony sup-

ported findings that the defendant harbored the belief for more than three years that he had been adopted, that the defendant had expressed a dislike of his parents because they would not accept his belief, and that six months before the fire the defendant was still talking about having been adopted.

1. The defendant claimed at trial that the fire was accidental. He now argues that the judge should have allowed his motion for required findings of not guilty, "because the Commonwealth did not carry its burden of ruling out accidental causes for the fire, especially since the Commonwealth's electrician was never found qualified or competent to rule out an accident caused by a tangled mesh of wires near the stairway in the [victims'] home where the Commonwealth maintained that the fire started."

As the factual summary stated above reveals, the jury were warranted in finding that, after reflection and planning, the defendant deliberately set the fire with the specific intent to murder his parents. Moreover, despite the defendant's present conclusory suggestion that testimony by the Commonwealth's electrician witness was inadequate,[2] the judge, after careful monitoring of the witness's testimony, properly admitted his opinion that "electricity from [certain identified] sources could be eliminated as . . . the cause of the fire."[3] The defendant's motion for required findings of not guilty was correctly denied.

2. As has been mentioned, the defendant was located and questioned by the police in a wooded area about one-quarter of a mile away from his parents' home. Based on statements made by the defendant during this questioning, and other facts disclosed by the investigation, the police obtained and executed three search warrants. The defendant filed motions to suppress his statements during the questioning in the wooded area and the items seized pursuant to the search warrants. The judge conducted an evidentiary hearing on the motions to suppress, and he thereafter filed written decisions denying the motions. The defendant argues that his statements to the police should have been suppressed because they were elicited without a

---

[2]This witness was licensed as a master electrician, had been a local wiring inspector, was executive secretary to the Commonwealth's board of examiners of electricians, was the chief electrical investigator for the Commonwealth, and, in that capacity, had investigated "several hundred" fires.

[3]The sources examined by the witness included wiring, outlet boxes, switches, various receptacles, fixtures, stereo equipment, and a circuit breaker box.

voluntary waiver of his Miranda rights. He also argues that the evidence obtained pursuant to the search warrants should have been suppressed because probable cause was lacking to support the issuance of the warrants and because he was illegally detained at the police station while the police obtained the warrants. We reject these arguments.

(a) With respect to the defendant's motion to suppress his statements, the judge found (with adequate support in the evidence that he found credible) the following facts. When the questioning occurred, the State troopers who had located the defendant in the wooded area did not consider him to be a suspect, or a target of the investigation, and did not know that the fire was of suspicious origin. These officers inquired of the defendant to obtain information about the fire. The defendant willingly talked to the police. "During the entire conversation the defendant was rational, soft spoken, clearly understandable, not emotional, or under the influence of alcohol or drugs, and [he] appeared of average intelligence." While the defendant was not told by the police of their intention not to allow him to leave until the questioning was completed, he never indicated that he wanted to stop their inquiry or to leave. During the conversation, the defendant indicated that he wanted to continue the questioning at the police station rather than in a police cruiser. At the close of the questioning in the woods, the defendant was not placed under arrest, and the police continued their investigation.

Contrary to the defendant's argument, the judge was warranted in finding that the defendant was not in custody for the purpose of the administration of Miranda warnings, see *Commonwealth* v. *Callahan*, 401 Mass. 627, 630 (1988); *Commonwealth* v. *Corriveau*, 396 Mass. 319, 327-328 (1985); *Commonwealth* v. *Bryant*, 390 Mass. 729, 737-738 (1984), and that his responses to the police were voluntarily and intelligently made.

(b) The same affidavit supported the applications for the three search warrants that were issued. The affidavit demonstrated that the fire had been deliberately set with the use of an accelerant; that the defendant's car had been found in front of the home and had been damaged by fire; that a plain view look into the interior of the defendant's car revealed a small carrying case containing clothes and some written material; that the defendant had not reported to work as scheduled; that the defendant may

have had a motive to kill his parents; and that questioning of the defendant shortly after the fire had furnished suspicious and incriminatory responses. The judge correctly concluded that, under the standard governing the sufficiency of an affidavit supporting an application for a search warrant, see *Commonwealth v. Jean-Charles*, 398 Mass. 752, 757 (1986), there was probable cause to believe that an examination of the defendant's clothing and sneakers could lead to evidence of traces of accelerant; that a search of the defendant's car could produce evidence of an accelerant and possible evidence of motive; and that a search of the damaged house could provide evidence that the fire was incendiary in nature.

The judge also correctly concluded that it was reasonable for the police to detain the defendant at least until they obtained and executed the search warrant to seize his clothing and sneakers. There was a basis to believe that the defendant's clothing and sneakers might harbor traces of an accelerant. There was the probability that, had the defendant been allowed to leave the police station, he could have hidden or destroyed the evidence. (The police may have had in mind that the defendant had clothing in his car, and, it could be inferred, that he intended to change into fresh clothing in order to eliminate any chance that the clothing he wore at the time of the fire could be tested for the presence of accelerants or other evidence.) The defendant did not volunteer to surrender his clothing or sneakers. The situation at the time of detention is analogous to the securing of a place to be searched to prevent destruction or removal of evidence during the relatively short period of time needed by the police to obtain a search warrant.[4] See *Commonwealth v. Voris*, 38 Mass. App. Ct. 377, 381 (1995), and cases cited.

3. The defendant's motion to dismiss the indictments was properly denied. The evidence presented to the grand jury established probable cause that the defendant committed the crimes with which he was charged. The prosecution did not mislead the grand jury, and no factual basis has been established to show that exculpatory evidence was purposely withheld from the grand jury.

4. While at the police station, the defendant spoke to his sister, Kersten Taylor, who asked him, "Why were you at the marsh [in the wooded area]?" The defendant responded, "I

---

[4]The judge also properly rejected the defendant's contention that the police commenced the respective searches before the warrants had been issued.

predicted all this." The defendant's statement to his sister was admitted in evidence after the judge held a voir dire and concluded that the statement was voluntary. The judge's ruling is now challenged as error.

Statements made by a defendant to a private citizen, who is not acting as a government agent, are ordinarily admissible in the absence of actual physical or psychological coercion, see *Commonwealth* v. *Allen,* 395 Mass. 448, 455-456 (1985); *Commonwealth* v. *Watkins,* 33 Mass. App. Ct. 7, 14 (1992), or proof that the defendant is suffering from a physical or mental infirmity or an abnormality caused by drugs or alcohol. See *Commonwealth* v. *Benoit,* 410 Mass. 506, 511 (1991); *Commonwealth* v. *Watkins, supra* at 14 n.7. The defendant's sister was at the police station trying to give him comfort and assistance. Because there was no actual demonstration of coercion, or of any physical or mental impediment, the judge properly concluded that the statement made by the defendant was voluntary, and the evidence was correctly given to the jury for their consideration. The defendant's reliance on his sister's testimony during the voir dire that he was handcuffed, was "looking at the floor," was "in a state of shock," and that he appeared "totally different" from his usual self and needed to be treated for "trauma" did not compel a conclusion that the statement was involuntary.

5. We turn to the defendant's arguments concerning the admission of evidence.

(a) The judge held a voir dire of the Commonwealth's chemist who tested the defendant's sneakers during the investigatory stage of the case for the presence of accelerants and determined that the sneakers tested positive for the presence of gasoline. The judge concluded that the chemist's testing procedures and testimony were reliable, and he rejected the defendant's challenges that the indictments should be dismissed, or the evidence suppressed, because potentially exculpatory evidence had been intentionally destroyed.

The sneakers were preserved and were produced at the trial. The Commonwealth's expert retained some of the vials of liquid derived from his tests which he testified could be retested. While it is unclear what further testing might have accomplished, the defendant did not seek any type of independent testing prior to trial, and his claim that further testing could have led to exculpatory evidence is speculative. Any deficien-

cies in the testing were properly left by the judge to the jury's consideration of the weight to be given to the evidence.

Each sneaker was tested separately, and the testing did not distinguish which part of the sneaker showed evidence of gasoline. The defendant claims that the chemist should have broken up the sneakers into sections and then tested each section so he could determine where the gasoline had been detected on each sneaker. This method of testing was necessary to show, as the defendant puts it, "whether the accelerant was on the top [of a sneaker] (consistent with a spill from setting the fire as argued by the Commonwealth), or the bottom (susceptible of innocent explanation)."

There is no duty on the Commonwealth to gather every piece of evidence that may be potentially exculpatory. See *Commonwealth* v. *Neal*, 392 Mass. 1, 7-9 (1984). The fact that the chemist might have done the testing in a different manner, which in some way may have benefited the defendant, is a permissible ground on which to build a defense, but it does not provide a reason to suppress or exclude otherwise competent scientific evidence. See *Commonwealth* v. *Richenburg*, 401 Mass. 663, 669 (1988). This issue was correctly left by the judge to cross-examination by the defendant's trial counsel and use in counsel's final argument.

(b) During its investigation, the Commonwealth used a State police canine which had been specially trained to detect accelerants. The dog alerted the police to the presence of an accelerant in several different portions of the home and on each of the defendant's sneakers. The judge denied the defendant's motion to exclude the result of the dog's "alerts." The motion asserted that the Commonwealth had not provided a sufficient foundation for the evidence and the evidence was unreliable.

The latter contention (unreliability) is premised on the argument that corroboration of the evidence was not present because the testing done on the defendant's sneakers by the Commonwealth's chemist should have been excluded. For the reasons discussed in the previous subsection of this opinion, this argument lacks merit.

The contention about the absence of foundation is based on the fact that the dog's handler, a State trooper, had died and was unable to testify about the use of the dog. The argument overlooks the testimony of other State troopers who were present during the dog's search for, and detection of, acceler-

ants, the foundation laid by these and other witnesses to support the "canine tracking" evidence, see *Commonwealth* v. *LaPlante*, 416 Mass. 433, 440 n.10 (1993), and the exercise by the defendant's trial counsel of cross-examination to test the foundation and reliability of the evidence.

(c) The Commonwealth introduced in evidence the notebook and the tape-recorded conversation between the defendant and his mother that had been seized from the defendant's car pursuant to a warrant. This evidence tended to demonstrate his obsession with the belief that his parents had adopted him and his displeasure because they would not agree with his views. The defendant argues that both pieces of evidence should have been excluded because they were irrelevant and too remote in time to have any probative value. The judge held a hearing on the defendant's motion in limine which raised these issues and made written findings to support his discretionary decision to admit the evidence.

The notebook and the taped-recorded conversation disclosed an unsatisfactory and discordant relationship between the defendant and his parents which had relevance to the issue of malice by suggesting a possible motive for the murders.[5] See *Commonwealth* v. *Hunter*, 416 Mass. 831, 837 (1994). Even though the evidence predated the trial by about three years, there was evidence showing that the defendant continued to harbor his delusion about his adoption at a time closer to the fire. The more timely evidence of his obsession made the material in the notebook and the tape-recorded conversation probative. See *Commonwealth* v. *Gil*, 393 Mass. 204, 216 (1984). It is also significant that, despite the relative age of the two items of evidence, both were found among the defendant's immediate possessions in his car after the fire. No abuse of discretion has been demonstrated in the judge's ruling.

(d) The judge admitted, over objection of the defendant's trial counsel, testimony by the defendant's sister that, about five days before the fire, her mother had told her that the defendant

[5]We reject the defendant's suggestion, made at oral argument, that the material in the notebook had no probative value because it was an expression of pure fantasy. As has been mentioned earlier, although the defendant characterized the material as "a science fiction novel," the notebook also included the defendant's statement that, "I am the ideal person for writing this book, because I actually experienced it. In reality, this story is ninety percent non fiction . . . ."

was "mad" at her and "won't talk to me." The judge also allowed, over objection, testimony by the defendant's brother that, during the same time frame, his mother had told him that the defendant "hates us [his parents]. He never speaks to us. Whenever I ask him a question, he gives me a one or two word answer, and if I ask him a further question or another question, he stomps off angry."

The testimony was probative of the mother's state of mind and not relevant to the defendant's state of mind. It should not have been admitted. See *Commonwealth* v. *Qualls*, 425 Mass. 163, 168 (1997); *Commonwealth* v. *Cyr*, 425 Mass. 89, 93-94 (1997). In our view, the evidence could not have had any influence on the verdicts because of the substantial amount of other evidence that demonstrated an unsatisfactory relationship between the defendant and his parents.

6. The defendant's trial counsel requested an instruction that the jury could consider whether the authorities had adequately investigated the case. See *Commonwealth* v. *Bowden*, 379 Mass. 472, 485-486 (1980). In claiming that the instruction was incorrectly denied, the defendant's appellate counsel now focuses on perceived deficiencies in the testimony of the electrician called by the Commonwealth who testified that the fire could not have been caused by an electrical malfunction. The electrician's testimony disclosed no reasonable factual basis to support the requested instruction. The defendant's trial counsel was given permission to argue to the jury the defendant's position that the investigation was not thorough. The judge properly exercised his discretion in declining to give the instruction.

7. We have reviewed the entire record pursuant to G. L. c. 278, § 33E. There is no reason to grant the defendant any relief from his convictions of murder in the first degree.

*Judgments affirmed.*