On May 9, 1990, a Superior Court jury convicted the defendant on one of two counts of rape, acquitting him on the other, G. L. c. 265, § 22(b ). The defendant filed a timely notice of appeal, and on July 14, 1992, this court affirmed his conviction. See Commonwealth v. Watkins, 33 Mass. App. Ct. 7 (1992). Twenty-three years later, the defendant-represented by new appellate counsel-filed a motion for postconviction relief, which a judge denied on June 13, 2016. The defendant again filed a timely notice of appeal, which appeal is now before us.
The defendant claims that he was denied his constitutional right to a public trial when court officers excluded his mother and appellate co-counsel during jury selection. He further claims that trial counsel's failure to object to the closure was constitutionally ineffective. In support of his motion, the defendant presented his own affidavit and affidavits from his mother; Willie J. Davis, his trial counsel and initial appellate counsel; and Maria E. Saccoccio, who assisted with the brief in the initial appeal. Saccoccio, then a new attorney, states in her affidavit that Davis asked her to come to the trial to observe. Saccoccio watched the trial with the defendant's mother, and claims that at times during jury empanelment court officers either asked them to leave the court room, or prevented them from entering altogether.
Davis avers in his affidavit that, consistent with then existing practice in the Middlesex County Superior Court, court officers closed the court room during jury empanelment. Based on that court's practice, Davis did not object. Davis further avers that he did not discuss the court room closure with the defendant because he then did not know that a criminal defendant's Sixth Amendment to the United States Constitution right to a public trial extended to jury empanelment. In addition, Davis, acting as the defendant's initial appellate counsel, believed it "unlikely that [he] received" a transcript of the jury selection portion of the trial, but if he did, there existed "no strategic or tactical reason" for him not to review it or provide Saccoccio with a copy.
The motion judge denied without a hearing the defendant's motion for postconviction relief, reasoning that because the defendant did not object to any court room closures during jury empanelment, he waived his public trial claim. The motion judge further determined that excluding Saccoccio from the court room did not create a substantial risk of a miscarriage of justice because the docket did not reflect her appearance as the defendant's co-counsel.
Discussion. 1. Court room closure. While violation of the public trial right is structural error, "even structural error is subject to the doctrine of waiver." Commonwealth v. Morganti, 467 Mass. 96, 101-102, cert. denied, 135 S. Ct. 356 (2014) (quotation omitted). See Commonwealth v. Alebord, 467 Mass. 106, 113, cert. denied, 134 S. Ct. 2380 (2014) (extending waiver doctrine to public trial right). Thus, where counsel fails to raise an objection to the closure of a court room, the defendant's claim of error is deemed to be procedurally waived. See Morganti, supra at 102. We review such an unpreserved claim of error to determine whether a substantial risk of a miscarriage of justice occurred. Commonwealth v. Lavoie, 464 Mass. 83, 89, cert. denied, 569 U.S. 981 (2013).
"[W]here the defendant has procedurally waived his Sixth Amendment public trial claim by not raising it at trial, and later raises the claim as one of ineffective assistance of counsel in a collateral attack on his conviction, the defendant is required to show prejudice from counsel's inadequate performance (that is, a substantial risk of a miscarriage of justice) and the presumption of prejudice that would otherwise apply to a preserved claim of structural error does not apply." Commonwealth v. LaChance, 469 Mass. 854, 856 (2014), cert. denied, 136 S. Ct. 317 (2015). "[I]n circumstances where ineffectiveness is based on '[a]n error of counsel, even if professionally unreasonable, [it will] not warrant setting aside the judgment ... if the error had no effect on the judgment.'" Id. at 859, quoting from Strickland v. Washington, 466 U.S. 668, 691 (1984). While a closed jury empanelment may constitute a structural error, it will rarely have any "effect on the judgment." Ibid.
Such is the case here.[2] The defendant contends that barring Saccoccio from the court room during jury empanelment prejudiced him because it prevented her from identifying any juror bias issues. The evident flaw in the defendant's argument is that even assuming Saccoccio was, at times, barred from the court room during jury empanelment, Davis, defendant's highly experienced criminal trial lawyer, was not. Saccoccio, then a newly admitted lawyer, had never practiced law in Massachusetts. Moreover, given Saccoccio's limited role as a trial observer, acting "as a kind of 13th juror," she admits she knew none of the facts of the case, including that the victim and witnesses had Harvard associations. As such, the defendant's claim that she may have spotted a genuine appellate issue-which Davis somehow missed-is sheer speculation.[3] Therefore, we discern no error in the judge's denial of the defendant's motion on this ground. See Weaver v. Massachusetts, 137 S. Ct. 1899, 1912-1913 (2017) (absent evidence that failure to object to closure during jury voir dire rendered trial fundamentally unfair, defendant not entitled to reversal due to ineffective assistance).
2. Juror challenges. The defendant also claims that the trial judge erred in seating a juror associated with Harvard University. Both the defendant and the victim attended Harvard at the time of the offense. The rape occurred on the Harvard campus, and the prosecutor identified to the jurors Harvard officials as potential witnesses or as trial observers. The defendant claims that these Harvard associations, and Harvard's general interest in the case and its outcome, required the trial judge to dismiss all potential jurors who identified some association with the school. He also argues that the trial judge erred in failing to excuse for cause other jurors with various connections to Harvard, forcing trial counsel to expend peremptory challenges on them.
"There are few aspects of a jury trial where we would be less inclined to disturb a trial judge's exercise of discretion, absent clear abuse, than in ruling on challenges for cause in the empanelling of a jury." Commonwealth v. Lattimore, 396 Mass. 446, 449 (1985), quoting from United States v. Ploof, 464 F.2d 116, 118-119 n.4 (2d Cir. 1972). "If the trial judge, who conducted the voir dire ..., believed that he had [e]mpanelled a jury of twelve open-minded, impartial persons, then we will set aside his action only where juror prejudice is manifest." Ibid., quoting from United States v. McNeill, 728 F.2d 5, 9 (1st Cir. 1984). The defendant bears the "heavy burden" of demonstrating that the alleged juror prejudice resulted in a "substantial risk that the case would be decided in whole or in part on the basis of extraneous issues." Commonwealth v. Ascolillo, 405 Mass. 456, 459-460 (1989) (quotation omitted). For two reasons, the defendant's argument is misplaced. First, he relies on case law holding that persons with a pecuniary interest in the outcome of a case are disqualified as jurors on that case. See Commonwealth v. Moore, 143 Mass. 136, 138 (1886). Moore, and its progeny, has no force here, as Harvard was not a party to this prosecution and had no pecuniary interest in its outcome. While it is true that the defendant, the victim, and every witness were associated with Harvard, that alone did not require the dismissal of every potential juror with a Harvard connection. See Ascolillo, supra at 460-461 (mere fact that juror is police officer not sufficient to remove for cause absent showing of prejudice or partiality).
Second, each juror with a Harvard connection was questioned individually by the trial judge to ensure their impartiality. The trial judge expressed satisfaction with these jurors' professed ability to remain impartial. As noted, a trial judge's determination of a potential juror's impartiality is given "great deference" as it is "essentially one of credibility, and therefore largely one of demeanor." Commonwealth v. Ferguson, 425 Mass. 349, 352-353 (1997), quoting from Patton v. Yount, 467 U.S. 1025, 1038 (1984). "Where, as here, the judge, who had the opportunity to observe the prospective juror, makes a determination that the juror is indifferent after exploring the grounds for a possible claim that the juror was not impartial, we cannot conclude, in the absence of any affirmative evidence to the contrary, that the judge abused his discretion." Commonwealth v. Amazeen, 375 Mass. 73, 83 (1978).[4]
3. Identical indictments. Finally, the defendant claims that the two identical rape indictments were constitutionally defective, violating his right to due process. This claim is barred by the principles of collateral estoppel. As this court concluded in the defendant's prior appeal, "the fact that the indictment on which the defendant was convicted is identical to the indictment on which he was acquitted is not, by itself, a ground for reversal." Watkins, 33 Mass. App. Ct. at 11. We decline the defendant's invitation to revisit our ruling in that case, a ruling that the Supreme Judicial Court has since cited with approval. See Commonwealth v. Hrycenko, 417 Mass. 309, 312-313 (1994) ("We agree with the Watkins court's reasoning and hold that identically-worded indictments are not defective if the defendant has the opportunity to obtain, through a bill of particulars, sufficient information to enable him to understand the charges against him and to prepare his defense").
Order denying motion for postconviction relief affirmed.

The defendant asserts that the trial judge's statement that the court room was "public" and that people would be "coming and going" lulled trial counsel into believing the court room would remain open, and thus, his appeal is factually distinct from LaChance and similar cases. We are not persuaded. Trial counsel clearly stated in his affidavit that he believed officers closed the court room during jury empanelment and that he did not know that the public trial right extended to jury empanelment. Thus, it is unlikely that the trial judge's statement prevented trial counsel from acting to preserve a right he then did not know the defendant possessed.

Furthermore, the defendant's assertion that trial counsel failed to order or review the transcript of the empanelment bears no relation to any claimed prejudice resulting from the closure of the court room. In any event, the motion judge was not satisfied that trial counsel did not receive the transcript. The record supports this finding. The Superior Court docket reflects that after the trial, the court reporter received an order to prepare a transcript of the trial proceedings. The Appeals Court docket in the initial appeal indicates that this court received eight volumes of transcripts. Finally, the prosecutor involved in the defendant's motion for postconviction relief filed an affidavit in which he stated that the Commonwealth's case file for the initial appeal contains eight volumes of transcripts, one of which is the jury empanelment proceeding.

We again note that the jury acquitted the defendant on one of the two counts of rape. See Commonwealth v. Crowder, 49 Mass. App. Ct. 720, 722 n.3 (2000) (split jury verdicts suggestive of impartial jury).